## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SELECTIVE INSURANCE COMPANY OF | : | |
| SOUTH CAROLINA, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  12-0800 |
| LOWER PROVIDENCE TOWNSHIP and | : | |
| LAWN RANGERS, INC., | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM

BUCKWALTER, S. J.                                                              June 26, 2013

     Currently pending before the Court are the Cross-Motions for Summary Judgment by

both Defendant Lower Providence Township and Plaintiff Selective Insurance Company of

South Carolina.  For the following reasons, Defendant Lower Providence Township's Motion is

granted and Plaintiff Selective Insurance Company's Motion is denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

     On March 5, 2010, John Roberto and his wife Patricia Roberto filed a complaint against

Lower Providence Township, Pennsylvania Department of Transportation and the

Commonwealth of Pennsylvania, Department of General Services in Montgomery County Court

of Common Pleas.  (Stipulation of Facts ("Stipulation") ¶ 1, April 19, 2013.)  Thereafter, on

August 12, 2010, the Robertos filed an Amended Complaint alleging that, on July 22, 2008, Mr.

---

    [1]  The parties have fully agreed and stipulated to the operative facts in this case, leaving
no issues of material fact with which the Court need contend.

Roberto was "walking on the sidewalk and/or property area, of Peacock Drive, in Lower Providence Township, when he stepped off the curb and onto the street, twisting his left foot as a result of a dangerous condition of a hole, sink hole, depression, of the street and/or property area of the aforesaid address causing the Plaintiff to fall into the hole and sustain injuries and other loss hereinafter set forth."  (Id. ¶¶ 2–3.)  Mr. Roberto claimed to suffer severe injuries to his left foot and ankle and alleged that, as a result, he experienced severe pain and suffering, mental anguish, an inability to attend to usual duties and occupation, and financial loss and detriment. (Id. ¶¶ 4, 6.)  Mrs. Roberto further alleged a loss of consortium resulting from her husband's injuries.  (Id. ¶ 7.)  At the time of this incident, Mr. Roberto was an employee of Defendant Lawn Rangers, Inc. ("Lawn Rangers") and was working in the course and scope of his employment with Lawn Rangers.  (Id. ¶ 5.)  The amended complaint in the Roberto litigation ("Roberto litigation") asserted that the accident was proximately caused by the negligence of Defendants, including the creation of dangerous conditions on the property, failing to warn Plaintiff, allowing the dangerous condition to remain, failing to protect, failing to properly supervise, failing to adequately inspect, and failing to warn pedestrians of the defective condition.  (Id. ¶¶ 8–9.) Lawn Rangers was not named as a defendant in that action.  (Id. ¶ 10.)

On August 23, 2011, Defendant Lower Providence Township (the "Township"), having been given leave of court, filed a joinder complaint ("Joinder Complaint") joining Lawn Rangers as an additional Defendant in the Roberto litigation under a theory of breach of contract. Underlying this cause of action was the fact that Lawn Rangers and the Township had previously entered into an Agreement (the "Agreement") to perform landscaping services within Lower Providence Township and specifically in the area around Peacock Drive where the alleged

2

accident occurred.  (Id. ¶¶ 11–12.)  Lawn Rangers agreed to indemnify the Township pursuant to

the following provision:

> 1.1 INDEMNIFICATION
> The Contractor [Lawn Rangers] shall, at all times, indemnify and save harmless the
> Owner [Lower Providence Township] . . . of and from all claims of whatsoever
> nature, including without limitation claims which may be made by any employees of
> the Contractor [or] by any employees of any Subcontractor to whom the Contractor
> may have let the performance of any part of the work embraced by this Contract, and
> the contractor will appear for and defend the Owner . . . against any and all such
> claims.

(Id. ¶ 14.)  Under the Agreement, Lawn Rangers was also required to obtain insurance coverage

for the benefit of Lower Providence Township as follows:

> Each Insurance policy required by this contract, excepting policies for workers
> compensation/employer's liability shall contain the following clauses:
>
> "The owner [Lower Providence Township] and engineer, their officials, employees,
> and volunteers are added as additional insureds as respects operations and activities
> of, or on behalf of the named insured [Lawn Rangers], performed under the contract
> with the owner."
> . . .
> "It is agreed that insurance maintained by owner [Lower Providence Township] and
> engineer shall apply in excess of an not contribute with insurance provided by this
> policy."

(Id. ¶ 15.)

Plaintiff Selective Insurance Company of South Carolina ("Selective") afforded coverage

to Lawn Rangers under Commercial General Coverage Policy S 1312035 (the "Policy").  (Id. ¶

16.)  This Policy was in effect during the time period March 15, 2008 through March 15, 2009.

(Id. ¶ 17.)  The Policy provided limits of liability in the amount of $1,000,000 per occurrence,

$3,000,000 in the aggregate.  (Id. ¶ 18.)  A Certificate of Insurance, dated March 4, 2008, was

issued to the Township as the Certificate Holder, identifying the Policy as having been issued to

Lawn Rangers, effective March 15, 2008 to March 15, 2009, and providing that the Township was "added as additional insured" under the Policy "as respects operations and activities of or on behalf of, the Named Insured performed under contract with the Certificate Holder." (Id. ¶ 19.) The Certificate went on to state that, "It is agreed that insurance maintained by the Certificate Holder and its Engineer shall apply in excess of and not contribute with the General Liability insurance provided by the Named Insured." (Id.)

Pursuant to the provisions of the Policy, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. ¶ 20.) The parties in this case agree that Mr. Roberto's alleged damages arose from an "occurrence" as so defined, and that his injuries arose out of and in the course of his employment with Lawn Rangers and while he was performing duties related to the Lawn Rangers Agreement with the Township. (Id. ¶¶ 21–23.)

The Policy contains several important provisions that are at issue in this case. First, the "Employer's Liability" exclusion in the Policy bars coverage for:

"Bodily injury" to:
 (1) An "employee" of the insured arising out of and in the course of:
  (a) Employment by the insured; or
  (b) Performing the duties related to the conduct of the insured's business or
 (2) The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph (1) above.
This exclusion applies:
 (1) Whether the insured may be liable as an employer or in any other capacity; and
 (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
This exclusion does not apply to liability assumed by the insured under an "insured contract."

4

(Id. ¶ 24.)  An "insured contract" is defined in the Policy as:

> f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Id. ¶ 25.)  The Policy also contains the following Contractual Liability exclusion, which provides.

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:
>
> (2)  Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than expenses incurred by or for a party other than the insured are deemed to be damages because of "bodily injury" or "property damage", provided:
>
> > (a)  Liability to such party for, or for the cost of that party's defense has also been assumed in the same "insured contract"; and
> >
> > (b)  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in damages to which this insurance applies are alleged.

(Id. ¶ 26.)  In addition, the Separation of Insureds provision in the Policy states that the terms of the Policy "appl[y] . . . [s]eparately to each insured against whom claim is made or 'suit' is brought."  (Id. ¶ 27.)  Finally, the "Elite Pac—General Liability Extension" amends the definition of "insured" in the policy as follows:

5

**Blanket Additional Insureds – Broad Form**

**Vendors – As Required by Contract**

**WHO IS AN INSURED** is amended to include as an additional insured any person or organization with whom you have agreed in writing in a contract, agreement or permit that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" caused, in whole or part by:

> **1.** Your ongoing operations performed for that person or organization, "your product" or premises owned or sued by you; but this provision does not include any architects, engineers, or surveyors with respect to any injury of damage arising out of the rendering or failure to render any professional services by or for you, including:
>
> a.   The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or
> b.   Supervisory, inspection, architectural or engineering activities.
> . . .
> This coverage shall be excess with respect to the person or organization included as an additional insured by its provisions; any other insurance that person or organization has shall be primary with respect to this insurance, unless this coverage is required to be primary and not contributory in the contract, agreement or permit referred to above.

(Id. ¶ 28.)

Pursuant to the Policy provisions, Defendant Lower Providence Township tendered the complaint in the Roberto litigation to Plaintiff Selective on March 10, 2011, seeking defense and indemnity.  (Id. ¶ 29.)  Selective, however, denied the Township's request on June 27, 2011 because "the roadway [where Mr. Roberto alleges he was injured] certainly was not owned, maintained nor controlled by Lawn Rangers and thus the injury suffered by plaintiff was not caused in any way, 'in whole or in part', by Lawn Rangers which is required for the above additional insured language to apply."  (Id. ¶ 30.)

6

On February 15, 2012, Selective initiated the current federal litigation seeking a declaratory judgment that it had no duty to defend and indemnify either Lower Providence Township in connection with the Roberto litigation or Lawn Rangers in connection with the Joinder Complaints.  On April 19, 2013, both the Township and Selective filed Motions for Summary Judgment.  Responses to both Motions were filed on May 3, 2013.  Although Lawn Rangers was given until May 17, 2013 to file a Response to Selective's Motion for Summary Judgment, it did not do so, thereby making these Motions ripe for judicial consideration.

## II.     STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg

Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

Although the moving party must establish an absence of a genuine issue of material fact,

it need not "support its motion with affidavits or other similar materials negating the opponent's

claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing

out . . . that there is an absence of evidence to support the nonmoving party's claims."  Id. at

325.  If the non-moving party "fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden at trial,"

summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Moreover, the mere existence of

some evidence in support of the non-movant will not be adequate to support a denial of a motion

for summary judgment; there must be enough evidence to enable a jury to reasonably find for the

non-movant on that issue.  Anderson, 477 U.S. at 249–50.

In the context of a declaratory judgment action in an insurance case, the summary

judgment standard must take into account the fact that, under Pennsylvania law, the interpretation

of an insurance contract is a question of law.  401 Fourth St., Inc. v. Investors Ins. Grp., 879 A.2d

166, 170 (Pa. 2005).  The task of interpreting an insurance contract is generally performed by the

court rather than a jury, and "[t]he purpose of that task is to ascertain the intent of the parties as

manifested by the terms used in the written insurance policy."  Id. at 171.  "[A]ll provisions of an

insurance contract must be read together and construed according to the plain meaning of the

words involved, so as to avoid ambiguity while at the same time giving effect to all of its

provisions."  Masters v. Celina Mut. Ins. Co., 224 A.2d 774, 776 (Pa. Super. Ct. 1966).  Where

no genuine issues of material fact exist and "[w]hen the language of the policy is clear and

8

unambiguous, a court is required to give effect to that language." <u>401 Fourth Street</u>, 879 A.2d at

171.  "Ambiguous terms must be strictly construed against the insurer, but the policy language

must not be tortured to create ambiguities where none exist." <u>Sikrica v. Nationwide Ins. Co.</u>, 416

F.3d 214, 220 (3d Cir. 2005).

Notably, these summary judgment rules do not apply any differently where there are

cross-motions pending.  <u>Lawrence v. City of Philadelphia</u>, 527 F.3d 299, 310 (3d Cir. 2008).  As

stated by the Third Circuit, "'[c]ross-motions are no more than a claim by each side that it alone

is entitled to summary judgment, and the making of such inherently contradictory claims does not

constitute an agreement that if one is rejected the other is necessarily justified or that the losing

party waives judicial consideration and determination whether genuine issues of material fact

exist.'" <u>Id.</u> (quoting <u>Rains v. Cascade Indus., Inc.</u>, 402 F.2d 241, 245 (3d Cir. 1968)).

## III.   DISCUSSION

At the core of this matter is Plaintiff Selective's contention that it had no duty to defend

or indemnify either Defendant Lower Providence Township in the Roberto litigation or

Defendant Lawn Rangers in the Joinder Complaint under the terms of the aforementioned

insurance Policy.  As to the Township, Plaintiff Selective argues that it had no duty to defend or

indemnify the Township because: (1) Defendant Lawn Rangers, Inc. and its insurer, Selective,

are immune from liability based on workmen's compensation immunity; and (2) Defendant

Lower Providence Township is not an "Additional Insured" under Lawn Ranger's commercial

liability Policy because Selective's blanket additional insured endorsement is not triggered by the

July 22, 2008 accident.  As to Lawn Rangers, Plaintiff contends that it had no duty to defend or

indemnify it in the Joinder Complaint filed by the Township on August 23, 2011 because (1)

9

coverage is excluded under the Contractual Liability and Employer's Liability Exclusions and (2) there was no "occurrence" that triggered Plaintiff's obligations.  The Court considers each of these arguments in turn.

### A.     Duty to Defend/Indemnify Lower Providence Township

#### 1.     Whether Selective is Immune from Liability Based on Workmen's Compensation Immunity

Plaintiff first argues that it has no defense or indemnification obligation to the Township pursuant to the immunity provided by the Workmen's Compensation Act, 77 P.S. § 411 et seq. Specifically, Section 481(b) of that Act states:

> In the event injury or death to an employee is caused by a third party, then such employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, ***but the employer, his insurance carrier, their servants and agents, employees, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise***, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

77 P.S. § 481(b) (emphasis added).  In other words, not only does the Act provide an employer with immunity from suit for accidents to employees occurring within the scope of employment, it also bars an employer from being joined in a suit by a third party arising from such an accident. Clark v. Willamette Indus., Inc., 918 F. Supp. 139, 141 (W.D. Pa. 1996).  An employee can waive this immunity, however, by expressly accepting liability for injuries in the workplace in a written contract.  Id.  In Bester v. Essex Crane Rental Corp., 619 A.2d 304 (Pa. Super. Ct. 1993), the Pennsylvania Superior Court, sitting en banc, held that in order for an indemnification

agreement to waive an employer's section 481(b) immunity, the intent to indemnify against

claims by employees must clearly appear from the language of the agreement.  Id. at 307.  The

court remarked that, although an indemnification agreement need not explicitly waive the

immunity of section 481(b), a court may not infer an employer's waiver of immunity in the

absence of express language that the employer agreed to indemnify claims by employees.  Id.

"Without this specific language demonstrating the employer's intent to indemnify employee

injury claims, the Workmen's Compensation Act precludes any liability on the part of the

employer."  Jones v. Se. Pa. Transp. Auth., No. Civ.A.91-7179, 1993 WL 410222, at *2 (E.D.

Pa. Sept. 17, 1993) (citing Bester).  "Blanket indemnity clauses will not create liability. The

parties must specifically utilize language which indicates that the employer/alleged indemnitor

intends to indemnify the third party against claims by employees of the alleged indemnitor; this

must clearly appear from the terms of the agreement."  Snare v. Ebensburg Power Co., 637 A.2d

296, 299 (Pa. Super. Ct. 1993).[2]

Plaintiff argues that the Agreement, in the present case, does not satisfy this exacting

standard.  Lawn Rangers agreed to indemnify the Township pursuant to the following provision:

1.1 INDEMNIFICATION
The Contractor [Lawn Rangers] shall, at all times, indemnify and save harmless the

---

[2]  The agreement in Bester stated only that the employer would indemnify "against all
loss, negligence, damage . . . arising from any action on account of personal injury . . .
occasioned by the operation" of the leased equipment."  Bester, 619 A.2d at 306.  The court
determined that this was not a waiver of immunity under section 481(b) because agreement
lacked specific language explicitly showing the employer's intent to indemnify against employee
injury claims.  Id. at 308–09; see also Jones, 1993 WL 410222, at *4 (holding that agreements
referring to indemnifying any "injury to person or persons" and "any injury to any person" does
not have the degree of precision required by section 481(b) and, thus, does not waive immunity
under Workmen's Compensation Act).

> Owner [Lower Providence Township] . . . of and from all claims of whatsoever nature, including without limitation claims which may be made by any employees of the Contractor [or] by any employees of any Subcontractor to whom the Contractor may have let the performance of any part of the work embraced by this Contract, and the contractor will appear for and defend the Owner . . . against any and all such claims.

(Stipulation ¶ 14.)  Plaintiff contends that the language "all claims of whatsoever nature" has been held by the Pennsylvania courts to be insufficient to waive workmen's compensation immunity.  See Bester, 619 A.2d at 307 ("Case law has established that the indemnity provision in the Workmen's Compensation Act must be construed strictly, and general indemnity language such as 'any or all' or 'any nature whatsoever' is insufficient.").  Such a clause does not contain language whereby Defendant Lawn Rangers agrees to indemnify Defendant Lower Providence Township arising out of the Township's own negligence and, thus, does not specifically waive workmen's compensation immunity.  Therefore, under Plaintiff's reasoning, Defendant Lawn Rangers—and in turn its insurer, Selective— remain immune from liability under the Workmen's Compensation Act.

While at first blush Plaintiff's argument appears plausible, closer scrutiny reveals that the concept of workmen's compensation immunity is entirely inapplicable to Selective's obligation to the Township as an insured.  As Plaintiff acknowledges in response to Defendant's Motion for Summary Judgment, "[i]t is [a] well-settled principle of Pennsylvania jurisprudence that civil actions flowing from any work related injuries of an employee are barred with respect to the employee's *employer*."  (Pl.'s Resp. Opp'n Mot. Summ. J. 4 (emphasis added).)  In the present matter, however, the issue is not whether the employer (Lawn Rangers)—and in turn, its insurer

Selective—is liable to the Township in the Joinder Complaint.[3]  Rather, it is whether the

Township, as a non-employer third party— and in turn, its insurer Selective—is liable to Roberto

in the underlying Roberto litigation.  Under the Policy, the Township seeks coverage from

Selective not through its indemnity Agreement with Lawn Rangers, but rather as an "additional

insured"[4] with independent coverage separate and apart from Lawn Rangers's liability.   Pursuant

to the Separation of Insureds provision, the Policy "[s]eparately to each insured against whom

claim is made or 'suit' is brought."  (Stipulation ¶ 28.)  In other words, nothing in the Policy

makes Plaintiff's obligations to the Township contingent on its obligations to Lawn Rangers.  In

turn, nothing in § 481(b) applies to Plaintiff in its capacity as the Township's insurer or

otherwise insulates Plaintiff as the Township's insurer from its purported contractual duty to

defend and indemnify Lower Providence in the Roberto litigation.[5]  Accordingly, the Court

---

[3]  To the extent Plaintiff argues that Lawn Rangers, and in turn Selective, are immune
from suit by the Township in the Joinder Complaint pursuant to § 481(b)—and argument not set
forth anywhere in Plaintiff's Motion for Summary Judgment—that issue is not properly before
this Court.  Rather, it should be decided by the court in which the Joinder Complaint is being
litigated.  See State Auto. Ins. Cos. v. Summy, 234 F.3d 131, 134 (3d Cir. 2000) (noting that, in
declaratory judgment actions involving insurance coverage issues, a district court should exercise
a general policy of restraint when the same issues are pending in a state court and there is an
inherent conflict of interest between the insurer's duty to defend in state court and its attempt to
characterize that suit in federal court as falling within the scope of a policy exclusion).

[4]  Plaintiff disputes the Township's status as an "additional insured"—an argument the
Court addresses in the next section of this Memorandum.

[5]  All of the cases cited by Plaintiff are inapposite.  In Bester, the injured employee sued a
third-party for its negligence.  619 A.2d at 306.  That third-party then sought to join the employer
under an agreement relating to indemnification.  Id.  The court found that, under the Workmen's
Compensation Act, the *employer* was immune and had not waived that immunity, thus
precluding a duty of the employer to *indemnify* the other party for injuries to the employer's own
employee.  Id. at 308–09.  Similarly, in Snare, an injured employee sued two third parties for
injuries sustained during the course of his employment.  Id. at 297.  The third parties sued the
employer on the basis of an indemnity contract and the court found that the *employer* was

rejects this argument.

2.      **Whether the Township is an "Additional Insured" Under Defendant,**
        **Lawn Ranger Inc.'s Commercial Liability Policy With Selective**

In its second effort to avoid defense and/or indemnity obligations to the Township, Plaintiff claims that the Township is not an "additional insured" under the Policy.  Upon consideration of this argument, the Court must disagree.

As noted above, a court must construe an insurance contract to give effect to the plain meaning of all provisions and to avoid ambiguities.  Masters, 224 A.2d at 776.  "After determining the scope of coverage under a policy, the court must examine the complaint in the underlying action to determine whether it triggers coverage."  Sikrica, 416 F.3d at 226.  The insurer's duty to defend is determined solely by the allegations in the underlying complaint.  Visiting Nurse Ass'n v. St. Paul Fire & Marine Ins., 65 F.3d 1097, 1100 (3d Cir. 1995).  "In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured."  Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999).  "[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered."  Erie Ins. Exch. v. Muff, 851 A.2d 919, 926 (Pa. Super. Ct. 2004).  "Instead it is necessary to look at the factual allegations contained in the complaint."  Id.  "Any doubts regarding the insurer's duty to defend must be resolved in favor of the insured."  Western World Ins. Co. v. Reliance Ins. Co., 892 F. Supp. 659, 662 (M.D. Pa. 1995).

─────────────────────

immune and did not waive that immunity under the Workmen's Compensation Act.  Snare, 637 A.2d at 298–99.

"In the insurance industry, additional insured provisions have a well established meaning. They are intended to protect parties who are not named insureds from exposure to vicarious liability for acts of the named insured." Harbor Ins. Co. v. Lewis, 562 F. Supp. 800, 803 (E.D. Pa. 1983). "The insurance industry places this meaning on additional insured provisions because insurers will not increase and alter the kind of risks insured against without the charge of additional premiums. In this kind of provision, the risks have not been increased or altered, for the insurer is only insuring the additional insureds against vicarious liability for acts of the named insured." Id.

At issue in this matter is the interpretation of the Policy's "Elite Pac—General Liability Extension," which amends the definition of "insured" in the policy as follows:

**Blanket Additional Insureds – Broad Form**

**Vendors – As Required by Contract**

**WHO IS AN INSURED** is amended to include as an additional insured any person or organization with whom you have agreed in writing in a contract, agreement or permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" caused, in whole or part by:

> 1. Your ongoing operations performed for that person or organization, "your product" or premises owned or sued by you; but this provision does not include any architects, engineers, or surveyors with respect to any injury of damage arising out of the rendering or failure to render any professional services by or for you, including:

> a.    The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

> b.    Supervisory, inspection, architectural or engineering activities.

> . . .

> This coverage shall be excess with respect to the person or organization

15

> included as an additional insured by its provisions; any other insurance that person or organization has shall be primary with respect to this insurance, unless this coverage is required to be primary and not contributory in the contract, agreement or permit referred to above.

(Id. ¶ 28.)  According to Plaintiff, this language provides that a third party is only an additional insured with respect to liability for bodily injury *caused in whole or in part* by its insured's (Lawn Rangers) ongoing operations with the third party.  The complaint in the Roberto litigation, however, does not allege that Mr. Roberto's injuries were proximately caused in whole or part by Lawn Rangers's ongoing operations, but by the Township's negligence, including creating dangerous conditions, failure to warn, allowing the dangerous condition to remain, failure to protect, failure to properly supervise, failure to adequately maintain, failure to adequately inspect, and failure to warn pedestrians of the defective condition.  (Stipulation ¶ 9.)  Therefore, Plaintiff argues that the Township cannot be an "additional insured" under the Selective policy and, in turn, cannot establish its claim for defense and indemnification.

Contrary to Plaintiff's argument, however, courts construing similar "additional insured" policy provisions under analogous circumstance have reached the opposite result.  For example, in R.R. Donnelley & Sons Co. v. Fireman's Fund Ins. Co., No. Civ.A.03-6412, 2004 WL 2810065 (E.D. Pa. Dec. 6, 2004), the court faced similar policy language.  In that matter, an employee of a trucking company was injured while picking up a bale of paper at R.R. Donnelley's plant.  Id. at * 1.  The trucker was clearing space in his truck when the bale rolled off a forklift operated by an R.R. Donnelley employee, crushing him.  Id.  The trucker sued R.R. Donnelley, but not his own employer, and R.R. Donnelley sought coverage as an additional insured under the trucking company's policy.  Id.  The court found that the language in the policy

16

did not "limit coverage solely to acts of negligence by the insured.  The policy cover[ed] additional insureds 'with respect to liability arising out of [the insured's] operations or premises owned by or rented to [the insured].'"  Id. at *4.  The court then reasoned that the trucker's injury, which occurred while he was cleaning out his truck to make room for a load of paper, arose out of the trucking company's operations.  Id.  It held that the insurer had a duty to indemnify the defendant as an additional insured because the policy clearly provided coverage where an injury resulted as a result of the insured's operations, regardless of whether the negligence which gave rise to the claim rested with the insured or with the alleged additional insured.  Id.

Likewise, in Township of Springfield v. Ersek, 660 A.2d 672 (Pa. Commw. Ct. 1995), the Township leased a golf pro shop to Ersek, and as a condition of the lease, Ersek was required to name the Township as an additional insured on his general liability policy "with respect to liability arising out of operations performed by the named insured."  Id. at 673, 676. "Operations" were broadly defined in the policy as "Golf Pro Shop operations conducted by the insured . . . ."  Id.  While working, one of Ersek's employees slipped and fell on the steps leading from the pro shop to the parking lot.  Id. at 673.  When the employee sued the Township for negligence, the Township claimed coverage as an additional insured under Ersek's policy.  Id. at 674.  The court held that there was coverage, finding that the employee fell on the pro shop premises while acting in the scope of his employment with Ersek.  Id. at 676.  Thus, there was a sufficient causal connection between the pro shop's operations and the employee's injuries.  Id. at 677.

Finally, in Mega Const. Corp. v. Quincy Mut. Fire Ins. Co., No. Civ.A.09-1728, __ F.

17

Supp. 2d __, 2012 WL 3994473 (E.D. Pa. Sept. 12, 2012), the policy at issue included Mega, a

general contractor, as an additional insured "but only with respect to liability arising out of [the

insured's] ongoing operations for that [party]."  Id. at *1.  The insurance company argued that the

endorsement provided Mega with coverage only for vicarious liability arising from the insured's

operations, and not for liability due to its own negligence.  Id. at *6.  Alternatively, it contended

that, even if the policy insured Mega for its own negligence, the connection between the injury

and the insured's "ongoing operations" was too tenuous.  Id.  The court disagreed, holding that

the provision was broad enough to provide coverage for Mega's negligence.  Moreover, it found

that the injury did, in fact, arise out of the insured's "ongoing operations," given that the injured

individual was working for the insured on the job site, performing the work that he was hired to

do, and undertaking this task pursuant to instructions received from his employer.  Id. at *9.  In

short, the injury occurred while the employee was performing a task necessary for the insured to

continue its operations at the job site.  Id.

        In the present case, a review of the Policy at issue together with the complaint in the

Roberto litigation reveals striking similarities to the aforementioned jurisprudence.  As set forth

above, the Policy makes the Township an additional insured "with respect to liability for 'bodily

injury' or 'property damage' caused, in whole or part by . . . [Lawn Rangers'] ongoing operations

performed for that person or organization [the Township]."  (Stipulation ¶ 28.)  Notably, and

contrary to Plaintiff's argument, the Policy does *not* require that the bodily injury be proximately

caused by Lawn Rangers's *negligence*, but only that it be caused, in whole or in part, by Lawn

Rangers's "ongoing operations."  By its plain or ordinary meaning, such a phrase would only

require that the ongoing operations play some role in the bodily injury at issue.  Moreover,

although the brief, thirteen-paragraph factual section of the Roberto complaint does not mention his employment with Lawn Rangers, the parties in this matter have expressly stipulated that, "[a]t the time of this alleged incident, Mr. Roberto was an employee of Lawn Rangers, Inc., working in the course and scope of his employment with Lawn Rangers, Inc." (Stipulation ¶ 5.)  They further concede that, "[a]t the time of the accident giving rise to the Roberto litigation, Lawn Rangers, Inc. had a contract with Lower Providence Township to perform landscaping services within Lower Providence Township, including the area upon which Mr. Roberto allegedly fell" and "Mr. Roberto was on the premises of Lower Providence Township at the time of his alleged accident on July 22, 2008 in the course of his employment in furtherance of the Lawn Rangers contract."[6]  (Id. ¶¶ 12, 13.)  Like the foregoing cases, Mr. Roberto was injured at the job site,

_____

[6]  The Court is well aware of the long-standing rule that an insurer's duty to defend is triggered, if at all, by the factual averments in the underlying complaint and that the Court should not conduct an examination of matters outside the four corners of the underlying complaint to determine whether a duty to defend exists.  First Mercury Ins. Co. v. Ross, No. Civ.A.10-1097, 2011 WL 1235092, at *7 (E.D. Pa. Apr. 1, 2011).  The purpose behind this rule is that an insurer should not be required to defend a claim when it is apparent on the face of the complaint that none of the injuries fall within the purview of the insurance policy.  Peerless Ins. Co. v. Brooks Sys. Corp., 617 F. Supp. 2d 348, 356 (E.D. Pa. 2008).  Given the circumstances of this case, that purpose would not be well served by blindly following Plaintiff's insistence that the Court apply the most restrictive interpretation of the four corners rule.  Due to the immunity conferred by the Workmen's Compensation Act, Mr. Roberto could not have sued his employer, Lawn Rangers, and, thus, would not have included any allegations about Lawn Rangers in his underlying complaint.  Nonetheless, Selective Insurance has expressly stipulated that it knew Mr. Roberto was injured while performing duties on a job site in the scope of his employment with Lawn Rangers.  (Stipulation ¶ 5.)  Accordingly, this is not a case where the insurer would not have been alerted to certain facts without the benefit of discovery in a declaratory judgment action.  Rather, these facts were already well known at the outset of the underlying litigation.  See Mega Constr., 2012 WL 3994473, at *9 (finding "additional insured" coverage despite the fact that complaint in underlying litigation did not include averments about the insured's operations).

   Moreover, it is equally well established that "[w]here a claim is potentially within the scope of an insurance policy, the insurer who refuses to defend at the outset does so at its own peril."  Cadwallader v. New Amsterdam Cas. Co., 152 A.2d 484, 488 (Pa. 1959).  In the event that an underlying complaint alleges a cause of action which may fall within the coverage of the

while performing work for Lawn Rangers in the course of its ongoing operations, and while he

was being paid.  Pure logic indicates that had Mr. Roberto not been at that job site engaging in

Lawn Rangers' landscaping operations, he would not have been injured.  Therefore, the Court

concludes that the Township's liability for Mr. Roberto's injuries arose out of Lawn Rangers's

ongoing operations, thereby making the Township an "additional insured" under the Policy.

### B.    Duty to Defend/Indemnify Lawn Rangers

In addition to denying coverage for the Township, Selective claims that it has no

obligation to defend/indemnify Lawn Rangers in the Joinder Complaint brought by the Township

in connection with the Roberto litigation.  Specifically, it argues that (1) two different policy

exclusions apply to bar coverage and (2) no "occurrence" triggered Plaintiff's duty under the

Policy.  The Court addresses each argument individually.

### 1.    Whether the Contractual Liability and Employer's Liability Exclusions Bar Coverage for Lawn Rangers

In its initial argument, Selective relies on two exclusions in the Policy.  "[W]hen an

insurer seeks to deny coverage based upon an exclusion in the policy, it is the insurer's burden to

demonstrate that the exclusion applies."  Allstate Ins. Co. v. Brown, 834 F. Supp. 854, 857 (E.D.

Pa. 1993).  "Hence, an insurer who refuses to defend a claim potentially within the scope of the

---

policy, the insurer is obligated to defend.  Id.  "If coverage (indemnification) depends upon the
existence or nonexistence of undetermined facts outside the complaint, until the claim is
narrowed to one patently outside the policy coverage, the insurer has a duty to defend claims
against its insured."  Stidham v. Millvale Sportsmen's Club, 618 A.2d 945, 953–54 (Pa. Super.
Ct. 1992).  Given Selective's obvious knowledge of the existence of facts that could trigger
coverage and its awareness of Roberto's reason for not including them, it would be both illogical
and unjust for this Court to find that Selective's duty to defend was not triggered.

policy, it does so at its own peril."  Id.

Selective first contends that the Policy's Contractual Liability Exclusion states the Policy

does not apply to:

> "Bodily injury" or "property damage" for which the insured is obligated to pay
> damages by reason of the assumption of a liability in a contract or agreement.

(Stipulation ¶ 26.)  Selective now argues that its insured, Lawn Rangers, was not an original

named defendant in the Roberto litigation, but rather was joined by the Township in an effort to

obtain indemnification for any losses sustained.  The basis for Township's joinder is a

contractual indemnification agreement that states:

> The Contractor [Lawn Rangers] shall, at all times, indemnify and save harmless the
> Owner [Township] . . . of and from all claims of whatsoever nature, including
> without limitation claims which may be made by any of the employees of the
> Contractor [or] by any employees of any Subcontractor to whom the contractor may
> have let the performance of any part of the work embraced by this contract, and this
> contractor will appear for and defend the Owner . . . against any and all such claims.

(Stipulation ¶ 14.)  Selective asserts that, according to the Contractual Liability Exclusion, it has

no obligation to indemnify its insured for liability of another assumed through a contract or

agreement.  Thus, any contractual liability assumed by Lawn Rangers in the Agreement with the

Township is excluded from coverage under the Policy.

In making this argument, however, Selective fails to cite the entire Contractual Liability

Exclusion, choosing rather to quote only an isolated portion.  A more complete citation reveals

that this exclusion is subject to an important exception, as follows:

**b.      Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay

damages by reason of the assumption of the liability in a contract or agreement [is excluded from coverage].  ***This exclusion does not apply to liability for damages:***

. . .

    (2)    ***Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.***  Solely for the purposes of liability assumed in an insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other tan expenses incurred by or for a party other than the insured are deemed to be damages because of "bodily injury or "property damage", provided:

        (a)    Liability to such party for, or for the cost of that party's defense has also been assumed in the same "insured contract"; and

        (b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in damages to which this insurance applies are alleged.

(Stipulation ¶ 26 (emphasis added).)  The term "insured contract," as used in that exclusion, is defined, in pertinent part as follows:

    **f.**    That part of any . . . contract or agreement pertaining to your business (***including an indemnification of a municipality in connection with work performed for a municipality***) under which you assume the tort liability of another party to pay for "bodily injury" . . . to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Id. ¶ 25 (emphasis added).)  Reading these provisions in conjunction, in order for an "insured contract" to be covered, (1) the underlying "bodily injury" must occur subsequent to the execution of the agreement; (2) the indemnitee's defense must be included within the scope of the agreement for coverage under the Policy; and (3) the attorneys' fees and litigation expenses must be for the defense of a proceeding in which covered damages are alleged.

In the present case, the indemnification agreement in the Lawn Rangers Agreement is clearly an "insured contract," as it is part of a contract pertaining to Lawn Rangers business under

which it assumes, in connection with the work it performs for the Township, the tort liability of

the Township to pay for bodily injury to a third person.  Moreover, Mr. Roberto's claimed bodily

injury occurred on July 22, 2008—subsequent to the execution of the October 11, 2007 contract

and indemnification Agreement between the Township and Lawn Rangers.  (Id. ¶¶ 2, 19.)

Further, in satisfaction of the second condition, the indemnification agreement expressly

mandates that Lawn Rangers "appear for and defend" the Township against claims such as Mr.

Roberto's.  Finally, as conceded by Selective, Mr. Roberto's claims are for "bodily injury" and

his damages arose from an "occurrence" as defined in the Policy.  (Id. ¶¶ 4, 21.) See Penn Nat'l

Ins. v. HNI Corp., 482 F. Supp. 2d 568, 609 (M.D. Pa. 2007) (noting that, under Pennsylvania

law, indemnity provision of independent contractor agreement, which required fireplace installer

to indemnify fireplace subcontractor for installer's negligence, was an "insured contract" within

meaning of "insured contract" exception to the contractual liability exclusion of installer's

liability policy).

Notably, Selective does not address this exception either in its own Motion for Summary

Judgment or in its Response to the Township's Motion for Summary Judgment.  As it is

abundantly clear, in light of the stipulated facts, that the "insured contract" exception to the

Contractual Liability Exclusion applies, Selective cannot rely on the Exclusion to avoid its

obligations under the Policy.

Second, Selective contends that the Employee Liability Exclusion also applies.  This

provision excludes coverage for, "'Bodily Injury' to . . . An 'employee' of the insured arising out

of and in the course of: (a) Employment by the insured . . . ."  (Stipulation ¶ 24.)  Both parties

concede that Roberto injured his foot during the course of his employment with Defendant Lawn

23

Rangers and then sued the Township for negligent maintenance of and failure to inspect the roadways.  (Stipulation ¶ 3.)  According to Selective, to the extent the Township now seeks indemnification from Lawn Rangers for any damages resulting from the Roberto litigation, Selective has no obligation to indemnify pursuant to the Employee Liability Exclusion.

Again, however, Selective misleadingly fails to cite the entirety of the Exclusion, which also contains a crucial exception, as follows:

> **e.    Employer's Liability**
>
> "Bodily injury" to:
>
> **(1)**    An "employee" of the insured arising out of an in the course of:
>
> > **(a)**    Employment by the insured; or
> >
> > **(b)**    Performing the duties related to the conduct of the insured's business or
>
> **(2)**    The spouse, child, parent, brother or sister of that "employee as a consequence of Paragraph **(1)** above.
>
> This exclusion applies:
>
> > **(1)**    Whether the insured may be liable as an employer or in any other capacity; and
> >
> > **(2)**    To any obligation to share damages with or repay someone else who must pay damages because of the injury.
>
> ***This exclusion does not apply to liability assumed by the insured under an "insured contract*****.**"

(Stipulation ¶ 24 (emphasis added).)  As explained in detail above, the Lawn Rangers/Lower Providence indemnification Agreement falls within the definition of an "insured contract." Therefore, according to the plain language of the Policy, the Employer's Liability Exclusion does not preclude coverage for Lawn Rangers under the Selective Policy.  In turn, to the extent Lawn Rangers is required to indemnify Defendant for losses arising from the Roberto litigation, Plaintiff Selective is required to provide coverage for such indemnification.

24

2.      **Whether There Was an Occurrence that Triggered Selective's Duty to Defend/Indemnify Lawn Rangers in the Joinder Complaint**

Plaintiff's final argument to avoid the defense and indemnification of Lawn Rangers focuses on the definition of "occurrence" within the Policy.  As indicated above, the Township filed a Joinder Complaint on August 23, 2011, which named Lawn Rangers, Inc. as an additional defendant in the Roberto litigation.  This Joinder Complaint alleged that Lawn Rangers breached their Agreement with the Township by failing to provide the Township with a defense and potential indemnification.  Selective now contends that it had no duty to defend or indemnify Lawn Rangers in that Joinder Complaint because the breach of contract claim at issue in the Joinder Complaint is not an "occurrence" as defined in the Policy and the Policy excludes any coverage to indemnify its insured for losses sustained in the Joinder Complaint under both the Contractual Liability Exclusion and the Employer's Liability Exclusion.

Plaintiff's argument, however, misunderstands the nature of the underlying litigation. Plaintiff is correct that "Pennsylvania law does not recognize the applicability of a general liability policy to breach of contract and breach of warranty claims.  The purpose and intent of a general liability insurance policy is to protect the insured from liability for essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking."  Pa. Mfrs.' Ass'n Ins. Co. v. L.B. Smith, Inc., 831 A.2d 1178, 1181 (Pa. Super. Ct. 2003).  As interpreted by the United States Court of Appeals, however, that ruling only holds that a general liability policy does not cover *underlying claims* alleging breach of contract.  Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591, 598 (3d Cir. 2009).  Indeed, in Pennsylvania Manufacturers, the underlying litigation alleged only breach of warranty and

breach of contract claims in conjunction with the sale of a faulty trash compactor.  Id. at 1180. The court found that these were disputes between parties to a contractual undertaking, not accidental injury, and, thus, there could be no coverage for any claim payable under either of those theories.  Id. at 1181.

In this case, however, the underlying Roberto litigation against the Township is founded on negligence claims seeking to impose tort liability for bodily injury.  The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Stipulation ¶ 20.)  The Policy then expressly covers damages because of "bodily injury" or "property" damage resulting from an "occurrence."  The parties in this case agree both that Mr. Roberto's alleged damages arose from an "occurrence" as so defined, and that his injuries arose out of and in the course of his employment with Lawn Rangers and while he was performing duties related to the Lawn Rangers Agreement.  (Id. ¶¶ 21–23.)  Accordingly, there was an actual "occurrence" which triggered the operation of the Policy.  Further, the "Contractual Liability" exclusion explicitly notes that, although the insurance does not apply to bodily injury for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement, this exclusion does *not* apply to liability for damages "[a]ssumed in a contract or agreement that is an 'insured contract.'"  (Id. ¶ 26.)  As noted above, an "insured contract" is defined as "[t]hat part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization." (Id. ¶ 25.)  As the Agreement between the Township and Lawn Rangers is clearly an "insured

26

contract," and as that "insured contract" required Lawn Rangers to indemnify the Township for "bodily injury" to one of Lawn Rangers's employees caused by an "occurrence," then basic logic indicates that the Policy covers the events at issue and triggers Selective's obligation to defend and indemnify Lawn Rangers in the Township's Joinder Complaint, which simply seeks to recoup on that "insured contract."

In short, the language of the Policy is clear. As such, Selective maintains a duty to defend and indemnify Lawn Rangers in the Joinder Complaint by the Township.

## IV. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff clearly has a duty to indemnify and/or defend Lower Providence Township in the underlying Roberto litigation. The Township clearly qualifies as an "additional insured" under the "Additional Insured" Endorsement. Moreover, Selective does not maintain any immunity pursuant to the Workmen's Compensation Act with respect to its coverage obligations to the Township as an "additional insured." In addition, the Court finds that Selective has a duty to indemnify and/or defend Lawn Rangers in the Joinder Action brought by the Township.[7]  Accordingly, the Court (1) denies Plaintiff's

---

[7]  The Court notes that Lawn Rangers neither filed a response to Selective's Motion for Summary Judgment nor filed a cross-motion for summary judgment. Nonetheless,"[t]he filing of a motion for summary judgment opens the door to entry of judgment in favor of a nonmoving party." Western World Ins. Co. v. Reliance Ins. Co., 892 F. Supp. 659, 661 (M.D. Pa. 1995). The grant of summary judgment for the non-moving party is clearly proper if both sides agree that there are no material fact issues and the only remaining issues are legal in nature, meaning that the grant of summary judgment for either party will expedite the disposition of the case. 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2720 (West 1983).

Notwithstanding Lawn Rangers's failure to file a cross-motion, entry of judgment in its favor is particularly appropriate in this case. The parties have stipulated to the operative facts. Moreover, Plaintiff sought a declaratory judgment that it had no obligation to defend or indemnify Lawn Rangers. "Determination of the proper coverage of an insurance contract when

Motion for Summary Judgment in its entirety; (2) grants the Township's Motion for Summary Judgment in its entirety; (3) enters judgment in favor of Defendants Lawn Rangers and the Township and against Selective on Plaintiff's Complaint; and (4) enters judgment in favor of Plaintiff the Township and against Selective on the Township's Counterclaim.

An appropriate Order follows.

---

the underlying facts are not in dispute is a question of law." Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts and Youngs, P.C., 821 F.2d 216, 219 (3d Cir.1987). Considering the arguments presented in Selective's Motion for Summary Judgment, as well as the opposing arguments presented on behalf of Lawn Rangers by the Township, the Court finds that Lawn Rangers is clearly entitled to defense and/or indemnification in the Joinder Action filed by the Township. Accordingly, judgment shall be entered in favor of Lawn Rangers and against Selective on Selective's Complaint.